<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CYNTHIA KOELLER AND ERIC KOELLER,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**PILOT TRAVEL CENTERS, LLC, PFJ SOUTHEAST, LLC,**<br><br>    **Defendants.** | Civil Action No. 22-2270 (CCC) (JSA)<br><br><br><br><u>**OPINION**</u> |

<u>**ALLEN, U.S.M.J.**</u>

  Before the Court is the motion of Defendants Pilot Travel Centers, LLC and PFJ Southeast, LLC (collectively, "Defendants") to transfer this case to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1404(a). (ECF No. 10). Plaintiffs Cynthia Koeller ("Ms. Koeller") and her husband Eric Koeller ("Mr. Koeller") (sometimes, collectively, "Plaintiffs") oppose the motion. No oral argument was heard, pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, and for good cause shown, Defendants' motion to transfer is **GRANTED**.

**I. BACKGROUND**

  This is a trip and fall case arising out of an incident that occurred in South Carolina. Plaintiffs are New Jersey residents. (Compl., p. 1; ECF No. 1-2). Defendant Pilot Travel Centers LLC is a limited liability company organized under the laws of Delaware with a principal place of

business in Knoxville, Tennessee. (Defs.' Mot. at 3, ¶ 18; ECF No. 10).[1] Defendant PFJ Southeast LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Kentucky. (Defs.' Br. at 4, ¶ 25). Defendants operate travel centers throughout the United States, including in South Carolina. (Pls.' Br. at 15, ¶¶ 15-17; ECF No. 11). Defendants describe their travel centers as essentially combination gas station, rest stop, restaurant, and general mercantile establishments, which also contain reservable amenities like showers and parking spaces. (*Id.* at ¶ 15).

In January 2021, while driving from New Jersey to Florida, Plaintiffs stopped at Defendants Flying J Travel Center (the "travel center") located at 111 Mill Branch Road, Latta, South Carolina. (*Id.* at ¶¶ 1, 3). While walking back to her vehicle, Ms. Koeller tripped and fell, suffering injuries to her right arm and shoulder. (*Id.* at ¶¶ 3, 26). Plaintiffs claim that uneven slabs of concrete on an unlit walkway caused Ms. Koeller's fall. (*Id.* at ¶ 25). The incident was reported to Defendants' Manager on Duty, Vonda Freeman, who completed a Customer Accident Form. (Defs.' Mot. at ¶¶ 11, 13). Immediately following the accident, Plaintiff was taken to McLeod Regional Medical Center in Florence, South Carolina, where she received medical treatment. (*Id.* at ¶¶ 14-15).

Plaintiffs commenced this action on January 25, 2022, in the Superior Court of New Jersey, Law Division, Sussex County, asserting a claim for negligence. (Compl., pp. 2-4; ECF No. 1-2). The Complaint also contains a per quod claim on behalf of Mr. Koeller. (Compl., p. 5).

---

[1] Defendants have submitted a document labeled "Motion to Transfer Venue," (ECF No. 10; "Motion" or "Mot."), which is comprised of one hundred and five (105) numbered paragraphs, (ECF No. 10), as well as a separate brief, ("Defs.' Br."; ECF No. 10-1), which repeats many of the points set forth in the Motion. Likewise, Plaintiff's opposition, (ECF No. 11), is comprised of numbered paragraphs, the first seven (7) pages of which are alleged factual background; the middle of page seven (7) then states: "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue." (ECF No. 11). Based on the nature of the parties' submissions, citations are, at times, to page numbers only and at other times to page and paragraph numbers.

On April 18, 2022, Defendants removed the case to this Court based on federal diversity jurisdiction because the opposing parties are citizens of different states and there is more than $75,000 in dispute. *See Wis Dep't of Corrections v. Schacht*, 524 U.S. 381, 289 (1994).  (ECF No. 1).

## II.  <u>MOTION TO TRANSFER</u>

On November 4, 2022, Defendants filed the instant motion to transfer this action to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1404(a).  (ECF No. 10).  Defendants argue that transfer is appropriate because both the private and public interest factors set forth by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), support transfer.  Specifically, as it relates to the private factors, Defendants argue that Ms. Koeller's fall and the medical care she received immediately after the incident occurred in South Carolina.  As a result, the claim arose in South Carolina. (Defs.' Br. at 2, 6).  Defendants also argue that proceeding with the case in South Carolina would be more convenient for the relevant witnesses, who they identify as residing or working in South Carolina and not subject to this Court's subpoena power.  (Defs.' Mot. at ¶¶ 57–59).  Finally, Defendants contend that the public factors support transfer because viewing the accident site in South Carolina may be important; South Carolina law will likely apply to Plaintiffs' negligence claim; South Carolina has a greater local interest in deciding a negligence suit that arose out of events that occurred in that state; and because the District of New Jersey is more congested and has a heavier caseload than the District of South Carolina. (Defs.' Mot. at ¶¶ 74, 81, 87, 96-97, 103).  According to Defendants, the only connection between New Jersey and this case is that Plaintiffs live here.

Plaintiffs counter that the private and public interests all favor their choice of venue in New Jersey, which is entitled to deference and should not be lightly disturbed.  (Pls.' Br. at 10).

Plaintiffs further argue that New Jersey is a more appropriate venue because that is where Ms. Koeller received post-accident medical treatment; because Defendants have allegedly not identified important witnesses that reside in South Carolina; Plaintiff's treating physician resides in New Jersey; and Plaintiff would be more inconvenienced by a transfer to South Carolina than Defendants would be if the case remained in New Jersey. (*Id.* at 11).

### III.   DISCUSSION

#### A.   Legal Standard

Section 1404(a) states that "a district court may transfer any civil action to any other district or division where it might have been brought" when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'" *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Whether the transferee district is a proper venue in civil diversity cases is governed by 28 U.S.C. § 1391(b). *Jumara*, 55 F.3d at 878. Once venue is determined to be proper in the transferee court, the party seeking transfer needs to convince the transferor court that the litigation would more conveniently proceed and that the interest of justice be better served by a transfer. *Caldis v. Starbucks Coffee Co.*, 2014 WL 2571557, at *1 (D.N.J. June 9, 2014) (citing *Jumara*, 55 F.3d at 879). The transferor court then reviews each of the private and public factors laid out by the Third

4

Circuit Court in *Jumara* to assess whether to grant a motion to transfer. *See Jumara*, 55 F.3d at 879.

The private interest factors are (1) plaintiff's forum preference, (2) defendant's forum preference, (3) where the claim arose, (4) the parties' convenience as indicated by their relative physical and financial condition, (5) the witnesses' convenience but only to the extent they may actually be unavailable for trial in one of the fora, and (6) the location of books and records. *Id.*

The public interest factors are:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.*

The list of factors in both the private and public categories is comprehensive. However, analysis of whether a transfer is appropriate under section 1404(a) analysis must be flexible and based on the unique facts of the particular case. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999). Although the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for . . . [change of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).

**B.     Venue in the District of South Carolina**

This Court must first determine whether this action could have been brought in the transferee court, the District of South Carolina. Venue is proper in a judicial district (1) where "any defendant resides," (2) where "a substantial part of the events or omissions giving rise to the

5

claim occurred," or (3) where "any defendant is subject to the court's personal jurisdiction" if no other venue is proper. 28 U.S.C. § 1391(b).

The Court's decision in *Denmark v. Pilot Travel Ctr., LLC*, 2019 WL 2353644 (D.N.J. June 4, 2019) is instructive. ***Denmark* involved a trip and fall at the same travel center at issue in this case**. In addition, the plaintiff in *Denmark* received medical treatment at McLeod Medical Center, the same medical center as Ms. Koller in this case. *Id.* In *Denmark*, Judge Hammer concluded that, pursuant to Section 1391(b)(2), venue was proper in the District of South Carolina because a substantial part of the events occurred in South Carolina, as the plaintiff tripped, fell, and sustained injuries at the defendants' travel center located in the state. *Id.* at *4. The same is true in this case. Therefore, pursuant to Section 1391(b)(2), this Court is satisfied that venue is proper in the transferee court.

C.     **The *Jumara* Factors**

This Court must now consider the private and public interest factors set forth in *Jumara*, 55 F.3d at 879. The first factor is the plaintiff's choice of forum. *See id.* Generally, a plaintiff's choice of forum, as manifested by where the suit was brought, receives deference and is not lightly disturbed. *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197–98 (E.D. Pa. 2008); *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 729 (D. Del. 2012). However, a plaintiff's choice of forum is given "little weight if the choice of forum has little connection with the operative facts." *Denmark*, 2019 WL 2353644, at *4 (quoting *Culp v. NFL Prods. LLC*, 2014 WL 4828189, at *4 (D.N.J. Sept. 29, 2014)). As such, in personal injury cases, several courts in this circuit have not afforded significant deference to a plaintiff's choice of forum when the underlying accident occurred in different state. *See Denmark*, 2019 WL 2353644, at *1–2 (concluding that the plaintiffs' choice of forum in the District of New Jersey was not entitled to considerable deference

because New Jersey had "no ostensible connection with the operative facts," as the accident and immediate medical care occurred in South Carolina); *Foster v. Marriott Resort Hosp. Corp.*, 2018 WL 3360763, at *4 (D.N.J. July 10, 2018) ("[B]ecause the injury underlying the complaint occurred in Florida, the deference normally afforded to Plaintiff's venue choice is curbed . . . ."); *Ellis v. Marriot Intern. Inc.*, 2011 WL 6339822, at *3 (M.D. Pa. Dec. 19, 2011) (transferring slip and fall personal injury suit brought by Pennsylvania resident to Hawaii, the site of the injury). The Court acknowledges that Plaintiffs are residents of New Jersey and that Ms. Koeller received medical treatment in New Jersey in the months following the accident. However, the operative facts giving rise to their claims indisputably did not occur in this District, given that the trip and fall that caused injuries to Ms. Koeller occurred in South Carolina. Accordingly, this factor is, at best, neutral.

The second and third factors, defendant's forum choice and where the claim arose, weigh strongly in favor of transfer. Defendants prefer the District of South Carolina, which is where the accident occurred. As for where the claim arose, the Court finds this factor strongly favors transfer. *See Denmark*, 2019 WL 2353644, at *5 (holding that the third private factor weighed in favor of transferring venue from New Jersey to South Carolina because the plaintiff tripped, fell, and received the initial medical care in South Carolina); *see also Coppola*, 250 F.R.D. at 196, 198 (holding that the location of where the claim arose weighed in favor of transferring venue to New Jersey because a propane gas cylinder explosion, which injured plaintiffs-construction workers occurred on the Princeton University campus in New Jersey and those injured were initially treated at New Jersey medical centers); *Bakali v. Jones*, 2017 WL 3877854, at *1 (third *Jumara* factor supported transfer when motor vehicle accident occurred in Pennsylvania).

As in the *Denmark* case, Plaintiff fell and suffered injuries at the Defendants' travel center in South Carolina and was initially treated at McLeod Medical Center in South Carolina. (Pls.' Br. at ¶¶ 1, 3, 11; Defs.' Mot. at ¶¶ 14–15). In other words, the events giving rise to the claims arose in South Carolina, not New Jersey. (Defs.' Mot. at ¶ 48). Although Ms. Koeller received post-accident medical care in New Jersey, personal injury actions are commonly transferred to the site of injury despite post-event medical treatment in New Jersey. *See Foster*, 2018 WL 3360763, at *3 (noting that personal injury cases are "routinely transferred" even though plaintiffs sought and received post-accident medical treatment in New Jersey); *Peller v. Walt Disney World Co.*, 2010 WL 2179569, at *2 (D.N.J. May 28, 2010) (concluding that transfer from New Jersey to Florida for a personal injury claim was appropriate, despite plaintiff receiving medical treatment in New Jersey, because New Jersey had little connection to the operative facts of the case); *Green v. Desert Palace, Inc.*, 2010 WL 1423950, at *2 (D.N.J. Apr. 8, 2010) (finding that transfer from New Jersey to Nevada of a personal injury case was appropriate, despite inconvenience to the plaintiff, and plaintiff's medical treatment occurring in New Jersey); *Rahwar v. Nootz*, 1994 WL 723040, at *2 (D.N.J. Dec. 27, 1994) (transferring venue for a personal injury claim from New Jersey to New York, despite the plaintiff's doctor residing in New Jersey). Therefore, this Court concludes the third private factor—where the claims arose—weighs strongly in favor of transfer.

The Court must also consider the convenience of the parties and the witnesses, the fourth and fifth *Jumara* factors. As it relates to fourth factor, the convenience of the parties, courts look to "the relative physical and financial conditions of [the] parties." *Goldstein v. MGM Grand Hotel & Casino*, 2015 WL 9918414, at *3 (D.N.J. Nov. 4, 2015). Plaintiffs reside in New Jersey, and therefore, the Court understands it would be more convenient to litigate in their home state. At the same time, however, Plaintiffs offer no specific inconvenience or financial impediment that

8

would preclude them from litigating in South Carolina, besides allegedly having to appear for an independent medical exam in South Carolina. *See Denmark*, 2019 WL 2353644, at *5 (noting factor was neutral when, among other things, plaintiffs did not establish financial incapability). Moreover, it is complete speculation that Plaintiffs' depositions or an independent medical exam would have to occur in South Carolina and could not be arranged to take place in New Jersey. *See Goldstein*, 2015 WL 9918144, at *3 n.1 (noting that plaintiff's deposition could occur in New Jersey, even if the case were transferred to state of the accident). While it appears that Defendants, large companies, are likely better positioned to absorb the general costs of litigation than the individual Plaintiffs, that remains the case whether the case proceeds in New Jersey or South Carolina. On balance, the fourth *Jumara* factor is neutral.

      The fifth factor, the convenience of the witnesses, weighs strongly in favor of transfer. The convenience of witnesses "is a particularly significant factor in a court's decision whether to transfer." *Coppola*, 250 F.R.D. at 199. "There are many different types of witnesses . . . and each one carries a different weight." *Id*. For example, "fact witnesses who possess firsthand knowledge of the events giving rise to the lawsuit have traditionally weighed quite heavily in the balance of convenience analysis." *Id*. On the other hand, the location of expert witnesses or treating physicians is not particularly relevant in the transfer analysis, as they would not be expected to testify as to liability issues, but instead provide damages related testimony. *See, e.g.*, *Goldstein*, 2015 WL 9918414, at *4 (citing *Rahwar*, 1994 WL 723040, at *2 ("When this litigation is viewed as both a liability and damages trial, the significance of the residence of plaintiff's doctor pales.")); *Coppola*, 250 F.R.D. at 199 (citing *Howell v. Shaw Indus.*, 1993 WL 387901, at *5 (E.D. Pa. Oct. 1, 1993) ("[T]he convenience of expert witnesses is generally given little weight in a motion to transfer venue.")).

Here, both parties have identified witnesses located in South Carolina. Defendants have identified, Ms. Freeman, the manager on duty at the travel center who prepared a Customer Accident Form following Ms. Koeller's fall. (*See* Defs.' Mot. at 3). Similarly, Plaintiffs' Rule 26 Initial Disclosures list the "Custodian of Records" at "[McLeod] Regional Medical Center" as someone likely to have discoverable information, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i). (*See* Defs.' Mot. at 3 ¶ 11, Ex. B). Presumably, McLeod's Custodian of Records and any health care workers who provided care to Plaintiff at McLeod Medical Center reside in South Carolina. *See Denmark*, 2019 WL 2353644, at *5 (noting fact that testimony may be sought from McLeod Medical Center personnel located in South Carolina).

On the other hand, neither party has identified any witnesses that reside in New Jersey. Plaintiffs refer to Ms. Koeller having received post-accident medical care from a physician in New Jersey. (Pls.' Br. at 11). However, Plaintiffs "fail[] to either (1) identify the physicians in any way; or (2) [provide] any certification regarding the scope of the testimony to be provided by her physicians." *Goldstein*, 2015 WL 9918414, at *4. Further, Plaintiffs do not argue that Ms. Koeller's treating physician is expected to provide liability related testimony, and thus this omission decreases the relevance of the physician's physical location. *See id*. (citing, *inter alia*, *Rahwar,* 1994 WL 723040, at *2 ("When this litigation is viewed as both a liability and damages trial, the significance of the residence of plaintiff's doctor pales."))). Moreover, to the extent testimony from Ms. Koeller's physician is relevant, there are other discovery tools available to lessen the burden that could result from transfer. *See Goldstein*, 2015 WL 9918414, at *4 (noting that alternative deposition arrangements could be made available for plaintiff's "orthopedic surgeons, neurologists, and radiologists" and that the plaintiff's treating physician "could be deposed in New Jersey and those depositions used for trial.").

In sum, both sides have identified witnesses that reside outside the subpoena power of this Court and who are in South Carolina, which is a compelling consideration that weighs in favor of transfer. To the extent Ms. Koeller's treating physician may be inconvenienced by a transfer to South Carolina, this factor still weighs in favor of transfer because the majority of non-party witnesses who likely have the most probative knowledge on contested issues of liability are located in the District of South Carolina. *See id.* Accordingly, on balance, the fifth *Jumara* factor strongly supports transfer.

Finally, the sixth private factor, the location of books and records, is neutral, as neither party has demonstrated that the location of records is a significant issue in this case.

Turning to the public interest factors, this Court finds these factors either support transfer or are neutral. The first public factor, enforceability of the judgment, is neutral here because neither Plaintiffs nor Defendants dispute that a judgment entered in either forum—New Jersey or South Carolina—could be enforced. *Coppola*, 250 F.R.D. at 200.

The second factor, "practical considerations that could make the trial easy, expeditious, or inexpensive," weighs in favor of transfer. *Jumara*, 55 F.3d at 879. This is a personal injury action allegedly resulting from a defect in a walkway in South Carolina. To that end, viewing the accident site may be appropriate in this case, as the condition of the walkway, the lighting and other factors could be at issue in the case. *See Rouse v. Harley-Davidson, Inc.,* 2021 U.S. Dist. LEXIS 13723, at *17-18 (M.D. Pa. Jan. 26, 2021) (noting practical importance of litigating in state containing physical conditions relevant to liability).

The third public factor is the relative administrative difficulty resulting from court congestion. As of March 31, 2022, New Jersey had 62,436 cases pending whereas 5,558 cases were pending in South Carolina. (Defs.' Mot. at ¶ 82). Plaintiffs concede that "the New Jersey

11

Court is busier than its South Carolina counterpart." (Pls.' Br at ¶ 12). Therefore, this factor supports transfer.

The fourth public interest factor is the local interest in deciding local controversies at home. This factor asks "which of the two potential districts maintains a greater interest in the action." *Coppola*, 250 F.R.D. at 200. Typically, the district in which "a substantial amount of the alleged culpable conduct occurred . . . favors retaining jurisdiction as a matter of local interest." *Id.* at 201; *see also Denmark*, 2019 WL 2353644, at *6 (holding that the transferor court in the District of New Jersey holds "scant interest" in adjudicating the matter because the plaintiff tripped and fell at the defendants' travel center in South Carolina and received initial medical care in South Carolina); *Foster*, 2018 WL 3360763, at *6 (concluding that "Florida has a local interest in determining negligence cases that occur within its boundaries" because the plaintiff fell in a hotel in Florida and received initial treatment for the injuries in Florida). For example, in *Lauria v. Mandalay Corp.*, 2008 WL 3887608 (D.N.J. Aug. 18, 2008), the court transferred a New Jersey resident's personal injury suit alleging negligence to Nevada, noting that Nevada had a strong local interest in addressing negligence within the state. *Id.* at *5. In so doing, the *Lauria* court noted that "New Jersey's concern for its injured citizens, although legitimate, is outweighed by another state's legitimate interest in discouraging unsafe local property conditions and unsafe local conduct." *Id.* at *4. The same is true in this case. South Carolina has the stronger interest in this controversy—both to address local incidents of negligence and to discourage unsafe local conduct. The fourth public factor weighs in favor of transfer.

The remaining public interest factors also support transfer. First, jury duty should not be imposed on the citizens of New Jersey when the events giving rise to the claim occurred outside the state. *See Foster*, 2018 WL 3360763, at *6 (stating that "due to the operative facts occurring

12

in Florida, it would be improper for the burden of jury duty to be imposed on the citizens of New Jersey"); *Rubes v. Kohl's*, 2017 WL 4167457, at *2 (D.N.J. Sept. 19, 2017) (holding that the public policies of the fora weigh in favor of transfer because people in New Jersey should not be burdened with a jury duty regarding conduct that occurred almost exclusively outside New Jersey). Second, in personal injury cases, "the local law of the state where conduct and injury occurred will be applied to determine an actor's liability." *Denmark*, 2019 WL 2353644, at *6 (quoting *P.V. ex rl. T.V. v. Camp Jaycee*, 922, A.2d 761, 765 (App. Div. 2007)). Here, the parties appear to agree that South Carolina law will likely apply to this case. (*See* Pls.' Br. 12; Defs.' Mot. ¶ 97). The court most familiar with the applicable state law should decide a diversity case. *See, e.g.*, *Caldis*, 2014 WL 2571557, at *4 ("[J]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law."). While this court is certainly capable of applying South Carolina law to Plaintiff's claims, the reality is that in such circumstances courts generally defer to judges of the forum state. *See id.*; *see also Goldstein*, 2015 WL 9918414, at *5 ("while this Court has the wherewithal to apply Nevada law to Plaintiff's claims, the District Court of Nevada is "certainly more likely to have a better knowledge of Nevada tort law."). On balance, the public interest factors weigh strongly in favor of transfer.

After considering both the private and public interest factors under the Third Circuit's analysis in *Jumara*, the Court concludes, on balance, that the relevant factors support transfer. Accordingly, this case should be transferred to the District of South Carolina, pursuant to Section 1404(a).

**IV.   CONCLUSION**

For the foregoing reasons, the Court transfers this case to the United States District Court for the District of South Carolina, pursuant to 28 U.S.C. § 1404(a). The Clerk shall not transfer

13

this case for fourteen (14) days.  *See* L. Civ. R. 72. 1(c)(1)(C).

                                                        s/Jessica S. Allen
                                                        **HON. JESSICA S. ALLEN**
                                                        **United States Magistrate Judge**

**DATED: May 4, 2023**